http://www.va.gov/vetapp16/Files4/1634325.txt

Citation Nr: 1634325 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 09-27 922 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia

THE ISSUES

1. Whether new and material evidence has been submitted to reopen a claim for entitlement to service connection for hypertension, for accrued benefits purposes.

2. Entitlement to service connection for hypertension, for accrued benefits purposes.

3. Entitlement to service connection for the cause of the Veteran's death.

REPRESENTATION

Appellant represented by: Armed Forces Service Corporation

ATTORNEY FOR THE BOARD

T. J. Anthony, Associate Counsel

INTRODUCTION

The Veteran had active service from July 1956 to January 1979. The Veteran passed away in June 2008. The appellant is the Veteran's surviving spouse.

These matters are before the Board of Veterans' Appeals (Board) on appeal of an October 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia. The Board remanded these matters in July 2013.

In her substantive appeal, the appellant requested a Board hearing in Washington, DC. See VA Form 9, Appeal to Board of Veterans' Appeals, received in July 2009. However, in a letter dated in July 2012, the appellant indicated that she wished to withdraw her hearing request. Under 38 C.F.R. § 20.704(e) (2015), a request for hearing may be withdrawn by an appellant at any time before the hearing. Therefore, the Board finds that the hearing request has been withdrawn, and will proceed with appellate review. 

In the July 2013 remand, the Board noted that the Veteran's September 2007 claim was a petition to reopen the issue of entitlement to service connection for hypertension. As discussed in the decision below, this is so because the Veteran was previously denied entitlement to service connection for hypertension in an unappealed June 2003 rating decision. On remand, the RO adjudicated the claim for entitlement to service connection for hypertension on the merits without first considering whether new and material evidence had been received to reopen the claim. See April 2016 rating decision. Nevertheless, the question of whether new and material evidence has been received to reopen a claim must be addressed by the Board because the issue goes to the Board's jurisdiction to reach and adjudicate the underlying claim on a de novo basis. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001); Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996). Accordingly, the issues before the Board at this time are as listed on the title page.

The issue of entitlement to service connection for the cause of the Veteran's death is addressed in the REMAND portion of the decision below. As further discussed in the REMAND portion, the issue is REMANDED specifically to the VA RO in Louisville, Kentucky.

FINDINGS OF FACT

1. A June 2003 rating decision denied entitlement to service connection for hypertension; the Veteran did not timely appeal that denial; and new and material evidence was not submitted as to the issue within the one-year appeal period following the issuance of the June 2003 rating decision.

2. Evidence received following the June 2003 rating decision is new and raises a reasonable possibility of substantiating the claim for entitlement to service connection for hypertension, for accrued benefits purposes.

3. The evidence of record at the time of the Veteran's death does not show that the Veteran's hypertension may be presumed to have been related to his active service, nor does it contain probative evidence demonstrating that it is at least as likely as not that the Veteran's hypertension had its onset during his active service or is otherwise causally or etiologically related to his active service.

CONCLUSIONS OF LAW

1. The June 2003 rating decision is final as to the issue of entitlement to service connection for hypertension. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.104, 3.156(b), 20.200, 20.202, 20.302, 20.1103 (2015).

2. New and material evidence having been received, the claim for entitlement to service connection for hypertension is reopened, for accrued benefits purposes. 38 U.S.C.A. §§ 1110, 1131, 5108 (West 2014); 38 C.F.R. §§ 3.156(a) 3.303 (2015).

3. The criteria for entitlement to service connection for hypertension, for accrued benefits purposes, are not met. 38 U.S.C.A. §§ 1110, 1131, 5108 (West 2014); 38 C.F.R. §§ 3.156(a) 3.303 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duty to Notify and Assist

Pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

In this decision, the Board finds that new and material evidence has been received to reopen the claim for entitlement to service connection for hypertension, for accrued benefits purposes. Given the favorable nature of this action, which is not prejudicial to the appellant, the Board need not address VA's duties to notify and assist as they pertain to that issue. See Bernard v. Brown, 4 Vet. App. 384 (1993).

As to the reopened claim for entitlement to service connection for hypertension, for accrued benefits purposes, VA's duty to notify was satisfied by letters dated in September 2008 and July 2013. See 38 U.S.C.A. §§ 5102, 5103, 5103A; 38 C.F.R. § 3.159; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

VA has also satisfied its duty to assist. The private treatment records that were identified and available prior to the Veteran's death have been associated with the record. In addition, the Veteran's service treatment records have been obtained and associated with the record. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The Veteran was not provided a VA examination as to the claim for entitlement to service connection for hypertension prior to his death. See 38 C.F.R. § 3.159(c)(4). However, the Board notes that, in adjudicating the appellant's claim for accrued benefits, generally, only evidence of record at the time of the Veteran's death may be considered. 38 U.S.C.A. § 5121; 38 C.F.R. § 3.1000. Accordingly, the Board finds that there is no duty to obtain a VA opinion in this case because such opinion would constitute evidence not of record at the time of the Veteran's death and would therefore not be for consideration in adjudicating the claim.

There is no indication in the record that any additional evidence that is relevant to the claim adjudicated in this decision, and that would be of consideration in view of 38 U.S.C.A. § 5121 and 38 C.F.R. § 3.1000, is available and not part of the record. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009). 

Compliance with Board Remand

As noted in the Introduction, the Board remanded this case in July 2013. Relevant to the matters decided herein, the July 2013 Board remand noted that the RO did not specifically address the Veteran's September 2007 petition to reopen the claim for entitlement to service connection for hypertension, which was received in September 2007. Therefore, the Board directed the Agency of Original Jurisdiction (AOJ) to adjudicate the issue of entitlement to service connection for hypertension with regard to accrued benefits, and issue a supplemental statement of the case, if warranted. Pursuant to the July 2013 Board remand, the AOJ adjudicated the issue of entitlement to service connection for hypertension, for accrued benefits purposes, in an April 2016 rating decision, and issued a supplemental statement of the case as to that issue in April 2016.. Accordingly, the Board finds that VA at least substantially complied with the July 2013 Board remand. See 38 U.S.C.A. § 5103A(b); Stegall v. West, 11 Vet. App. 268, 271 (1998); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008).

Analysis - Reopening the Claim for Service Connection for Hypertension

In general, rating decisions that are not timely appealed are final. See 38 U.S.C.A. § 7105; 38 C.F.R. § 20.1103. An exception to this rule is provided in 38 U.S.C.A. § 5108, which states that if new and material evidence is presented or secured with respect to a claim that has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.

The question of whether new and material evidence has been received to reopen a previously denied claim must be addressed by the Board in the first instance because the issue goes to the Board's jurisdiction to reach and adjudicate the underlying claim on a de novo basis. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001); Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996). If the Board finds that no such evidence has been offered, that is where the analysis must end, and further analysis beyond consideration of whether the evidence received is new and material is neither required nor permitted. Barnett, 83 F.3d at 1384.

New evidence is existing evidence not previously submitted to VA. Material evidence is existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

In determining whether evidence is new and material, the credibility of the evidence is generally presumed. Justus v. Principi, 3 Vet. App. 510, 512-13 (1992). In Elkins v. West, 12 Vet. App. 209 (1999), the United States Court of Appeals for Veterans Claims (Court) held that the Board must first determine whether the appellant has presented new and material evidence under 38 C.F.R. § 3.156(a) to have a finally denied claim reopened under 38 U.S.C.A. § 5108. Then, if new and material evidence has been submitted, the Board may proceed to evaluate the merits of the claim, but only after ensuring that VA's duty to assist has been fulfilled. See Vargas-Gonzalez v. West, 12 Vet. App. 321, 328 (1999).

The Court has also held that the law should be interpreted as enabling reopening of a claim, rather than to precluding it. See Shade v. Shinseki, 24 Vet. App. 110 (2010). The focus is not exclusively on whether evidence remedies the principal reason for denial in the last prior final decision, but on whether the evidence, taken together, could at least trigger the duty to assist or consideration of a new theory of entitlement. Id. at 118.

In general, service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. To establish service connection for a disability, the claimant must show: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d. 1163, 1167 (Fed. Cir. 2004).

In this case, the Veteran submitted an original claim for entitlement to service connection for hypertension in August 2002. See VA Form 21-526, Veteran's Application for Compensation and/or Pension, received in August 2002. In the June 2003 rating decision, the RO denied the Veteran's claim for entitlement to service connection for hypertension. In so doing, the RO explained that medical records were requested from the two sources identified by the Veteran, but that both sources indicated that no treatment records for the Veteran were located. Thus, the RO denied service connection for hypertension because there was no evidence that he had the claimed condition. The RO notified the Veteran of the decision in a letter dated June 23, 2003. The notification letter explained to the Veteran his right to appeal the denial, and was enclosed with a VA Form 4107, Your Rights to Appeal Our Decision, explaining the steps necessary to appeal the June 2003 rating decision. The Veteran did not submit a notice of disagreement or new and material evidence as to the issue within the one-year appeal period. As such, the Veteran did not timely appeal the June 2003 rating decision's denial of entitlement to service connection for hypertension. See 38 C.F.R. §§ 3.156(b), 20.201, 20.302. The June 2003 rating decision is therefore final. 38 U.S.C.A. § 7105; 38 C.F.R. § 20.1103.

Evidence associated with the record since the final June 2003 rating decision relevant to the Veteran's hypertension claim includes private treatment records showing a diagnosis for hypertension. This evidence is new because it was not previously considered by VA. It is also material in that it provides competent medical evidence that the Veteran was diagnosed with hypertension. Thus, it relates to an unestablished fact and raises a reasonable possibility of substantiating the Veteran's claim for entitlement to service connection for hypertension. Accordingly, the Board finds that new and material evidence has been received to reopen the Veteran's claim for entitlement to service connection hypertension, and the claim is therefore reopened for accrued benefits purposes. 38 C.F.R. § 3.156(a).

Analysis - Service Connection for Hypertension for Accrued Benefits Purposes

The appellant seeks entitlement to service connection for hypertension, for accrued benefits purposes. Prior to his death, the Veteran contended that his hypertension was due to herbicide exposure while stationed in Vietnam. See VA Form 21-4138, Statement in Support of Claim, received in September 2007. The Veteran's certificate of death reflects that he passed away in June 2008. The immediate causes of death were respiratory failure, lung metastases, and carcinoma of the urinary bladder. 

Accrued benefits are benefits to which a Veteran was entitled at death, based on evidence on file at the date of death, and due and unpaid, to be paid to survivors as provided by law. 38 U.S.C.A. § 5121; 38 C.F.R. § 3.1000. For a claimant to prevail on an accrued benefits claim, the record must show that (i) the appellant has standing to file a claim for accrued benefits, (ii) the Veteran had a claim pending at the time of death, (iii) the Veteran would have prevailed on the claim if he or she had not died; and (iv) the claim for accrued benefits was filed within one year of the Veteran's death. 38 U.S.C.A. §§ 5121, 5101(a); 38 C.F.R. § 3.1000; Jones v. West, 136 F.3d 1296 (Fed. Cir. 1998). In considering the appellant's claim for accrued benefits, generally, only evidence of record at the time of the Veteran's death is considered. 38 U.S.C.A. § 5121; 38 C.F.R. § 3.1000.

In general, service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. To establish service connection for a disability, the Veteran must show: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden, 381 F.3d. 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection for certain chronic diseases, to include hypertension, as a cardiovascular-renal disease, may also be established on a presumptive basis by showing that the disease manifested to a compensable degree within one year from the date of separation from service. 38 C.F.R. §§ 3.307(a)(3), 3.309(a). If not shown as chronic during service or if a diagnosis of chronicity is legitimately questioned, continuity of symptomatology after service is required. 38 C.F.R. § 3.303(b). Continuity of symptoms may establish service connection only for those diseases listed in 38 C.F.R. § 3.309(a). 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.303(b), 3.307(a)(3), 3.309(a); Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013).

Under VA regulations, hypertension must be confirmed by readings taken two or more times on at least three different days. 38 C.F.R. § 4.104, Diagnostic Code 7101, Note (1). Hypertension is defined as meaning that the diastolic blood pressure is predominantly 90 mm or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160 mm or greater with a diastolic blood pressure of less than 90 mm. Id.

In addition, medical authorities have suggested various thresholds ranging from 140 mm Hg systolic and from 90 mm Hg diastolic to as high as 200 mm Hg systolic and 110 mm Hg diastolic as reflective of hypertension. See Dorland's Illustrated Medical Dictionary 896 (32nd ed. 2012).

Initially, the Board finds that the appellant, as the Veteran's surviving spouse, has standing to file a claim for accrued benefits. The Board further finds that the Veteran had a claim for entitlement to service connection for hypertension pending at the time of his death and that the appellant filed her claim for accrued benefits within one year of the Veteran's death. Therefore, to prevail on the claim for accrued benefits, the appellant must show that the Veteran would have prevailed on the claim if he had not died. See 38 U.S.C.A. §§ 5121, 5101(a); 38 C.F.R. § 3.1000; Jones, 136 F.3d 1296.

Concerning evidence of a current disability, private treatment records dating during the appeal period that were of record at the time of the Veteran's death show a diagnosis of hypertension. Accordingly, the record shows that the Veteran had a current disability of hypertension prior to his death. 

As to in-service incurrence of hypertension, the Veteran's service treatment records do not show a diagnosis of hypertension. The records include the following blood pressure readings: 

February 2, 1955: 132/70
July 24, 1956: 124/80
August 29, 1958: 134/86
April 27, 1959: 132/70
August 29, 1962: 120/80
August 2, 1967: 142/78
August 21, 1968: 138/88
December 12, 1968: 132/82
August 27, 1974: 120/84
August 30, 1976: 130/84
August 14, 1979: 138/88

In addition, a report for medical examination dated July 23, 1975, includes an illegible blood pressure reading that appears to list a systolic reading of 134 or 139 mm and a diastolic reading of 70 or 80 mm. The service treatment records also reflect that the Veteran denied current or past high blood pressure in reports of medical history dated in February 1955, July 1956, August 1967, August 1974, July 1975, and August 1976. Thus, the service treatment records do not show blood pressure readings falling under the definition provided in 38 C.F.R. § 4.104, Diagnostic Code 7101, Note (1), or the definition provided in in Dorland's Illustrated Medical Dictionary, confirmed by readings taken two or more times on at least three different days. Rather, they show readings that may have been elevated, but include a systolic high reading of 142, measured on one occasion with all other systolic readings falling under 140 mm, and a diastolic high reading of 88 mm, measured on two occasions. Accordingly, the Board finds that the evidence does not show that the Veteran's hypertension had its onset during his active service.

With regard to service connection for hypertension on a presumptive basis as a chronic disease under the provisions of 38 C.F.R. §§ 3.307(a)(3) and 3.309(a), the record does not reflect that the Veteran was diagnosed with hypertension within one year of his separation from active service in January 1979. Rather, the earliest evidence reflecting a diagnosis for hypertension is dated nearly 30 years after the Veteran's separation from active service. Accordingly, the Board finds that service connection is not warranted under 38 C.F.R. §§ 3.307(a)(3) and 3.309(a).

The Board acknowledges the Veteran's contention that his hypertension was due to in-service exposure to herbicide agents. Certain diseases may be presumed to have been incurred in service where a Veteran was exposed to herbicide agents, such as Agent Orange, while on active service, even when there is no evidence of such exposure during the period of service. 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307(a)(6), 3.309(e). Veterans who served in the Republic of Vietnam during the Vietnam Era are presumed to have been exposed to herbicide agents. 38 C.F.R. § 3.307(a)(6)(iii). In this case, the record reflects that the Veteran had service in the Republic of Vietnam during the Vietnam Era. See 3101 Print, Request for Information, with receipt date in December 2002. Therefore, herbicide exposure is conceded. However, hypertension is not included in the list of diseases associated with exposure to herbicide agents. In addition, 38 C.F.R. § 3.309(e), Note 2, expressly states that hypertension is not included in the term "ischemic heart disease," which is listed as a disease associated with exposure to herbicide agents. Therefore, the Board finds that service connection is not warranted on a presumptive basis under 38 C.F.R. §§ 3.307(a)(6) and 3.309(e).

Notwithstanding the foregoing presumption provisions, a claimant is not precluded from establishing service connection with proof of direct causation. Stefl v. Nicolson, 21 Vet. App. 120 (2007); see also Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994). However, the only evidence of record etiologically linking the Veteran's hypertension to his active service is the Veteran's assertions and, by extension, those of the appellant that the disability is due to in-service herbicide exposure. The appellant does not allege, and the record does not otherwise show, that she has, or that the Veteran had, medical education, training, or experience. Accordingly, both the Veteran and the appellant are considered lay witnesses. 38 C.F.R. § 3.159(a). The likely etiology of hypertension is a complex medical issue that does not lend itself to lay observations. Therefore, the assertions from the Veteran and the appellant are not considered competent, and are not probative on the matter. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007) (noting that lay testimony is competent to establish observable symptomatology but not competent to establish medical etiology or render medical opinions). Thus, there is no competent evidence of a nexus between the Veteran's hypertension and his active service. For that reason, entitlement to service connection for hypertension is not warranted on a direct basis as due to in-service herbicide exposure.

In view of the foregoing, the Board concludes that the preponderance of the evidence is against the claim for entitlement to service connection for hypertension for accrued benefits purposes. Because the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not for application, and the claim must be denied. 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

ORDER

New and material evidence having been received, the claim for entitlement to service connection for hypertension is reopened.

Entitlement to service connection for hypertension, for accrued benefits purposes, is denied.

REMAND

The appellant asserts that the cause of the Veteran's death is related to his active service. The Veteran's death certificate lists as immediate causes of death respiratory failure, lung metastases, and carcinoma of the urinary bladder. In an October 2012 Informal Hearing Presentation, the appellant's representative argues that the Veteran's death was related to exposure to industrial solvents, benzene, and other chemicals in drinking water while stationed at Camp Lejeune, North Carolina, in the late 1950s and early 1960s. In support of this argument, the representative submitted Original Orders from the Veteran's service personnel records showing that he was stationed at Camp Lejeune, North Carolina, in 1958, 1962, and 1963. The representative also submitted internet-based materials from the VA website reflecting that, under a law signed August 6, 2012, Veterans who served on active duty or resided at Camp Lejeune for 30 days or more between January 1, 1957, and December 31, 1987, may be eligible for medical care through VA for 15 health conditions, including bladder cancer and lung cancer. The Board observes that the Veteran's service treatment records reflect treatment while at Camp Lejeune.

VA has acknowledged that persons residing or working at the United States Marine Corps Base Camp Lejeune from August 1953 through December 1987 were potentially exposed to drinking water contaminated with volatile organic compounds (VOCs). See Adjudication Procedure Manual M21-1 (M21-1), Part IV, Subpart ii, Chapter 2, Section C, Subsection 5, Paragraph o. In the early 1980s, it was discovered that two on-base water-supply systems were contaminated with the VOCs trichloroethylene (TCE), a metal degreaser, and perchloroethylene (PCE), a dry cleaning agent. The water-supply systems were also found to be contaminated with benzene, vinyl chloride, and other VOCs. Id. Bladder cancer and lung cancer are included in a non-exclusive list of diseases potentially associated with exposure to the contaminants present in the Camp Lejeune water supply between 1953 and 1987. See M21-1, Part IV, Subpart ii, Chapter 2, Section C, Subsection 5, Paragraph p. VA is considering presumptions for service connection for certain conditions associated with exposure to Camp Lejeune water sources, and denials of service connection for bladder cancer where there are allegations of exposure to contaminated water at Camp Lejeune are currently stayed until further notice. M21-1, Part IV, Subpart ii, Chapter 2, Section C, Subsection 5, Paragraph q. The appellant's claim for entitlement to service connection for the cause of the Veteran's death has not yet been developed based on current procedures for processing Camp Lejeune claims, as set forth in the Adjudication Procedure Manual M21-1. Accordingly, the Board finds that the matter must be remanded for further development under those procedures.

In that regard, the Board notes that since the appellant's claim was initially adjudicated by the Roanoke, Virginia RO in October 2008, VA promulgated guidelines for handling claims based on exposure to contaminated drinking water at Camp Lejeune. The guidelines direct that Camp Lejeune claims and appeals are to be handled exclusively by the VA RO in Louisville, Kentucky. See M21-1, Part IV, Subpart ii, Chapter 1, Section I, Subsection 6, Paragraph g. Because the appellant's appeal on the issue of entitlement to service connection for the cause of the Veteran's death is based in part on the theory that the disabilities causing the Veteran's death were due to exposure to contaminated water at Camp Lejeune, the Board remands the current appeal to the Louisville, Kentucky RO for further development consistent with current procedures as set forth in the Adjudication Procedure Manual M21-1.

Accordingly, the case is REMANDED for the following action:

1. In accordance with current procedures for processing Camp Lejeune claims set forth in the Adjudication Procedure Manual M21-1, transfer the record to the VA RO in Louisville, Kentucky. The RO should follow all necessary procedures for the development of the claim in light of the contention that the Veteran's cause of death, listed as respiratory failure, lung metastases, and carcinoma of the urinary bladder on the Veteran's death certificate, was due to exposure to contaminated water at Camp Lejeune.

2. After completion of the above, the VA RO in Louisville, Kentucky, must review the record, including the evidence entered since the most recent supplemental statement of the case, and readjudicate the issue of entitlement to service connection for the cause of the Veteran's death. If any benefit sought remains denied, furnish the appellant and her representative with a supplemental statement of the case. A reasonable period should be allowed for response before the appeal is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs